In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 13-3264, 13-3462, 14-2591, 14-2602 and 14-2495

IN RE: SOUTHWEST AIRLINES VOUCHER LITIGATION

ADAM J. LEVITT and HERBERT C. MALONE,
individually and on behalf of all others
similarly situated,

Plaintiffs-Appellees/Cross-Appellants,


v.


SOUTHWEST AIRLINES COMPANY,

Defendant-Appellee/Cross-Appellee.


APPEALS OF:
GREGORY MARKOW and
ALISON PAUL,

Objectors-Appellants/Cross-Appellees.


_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CV-8176 — **Matthew F. Kennelly**, *Judge*.

_____

ARGUED FEBRUARY 11, 2015 — DECIDED AUGUST 20, 2015

———————————

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. These appeals present several issues concerning class action litigation and settlements. The most general is whether the "coupon settlement" provisions of the Class Action Fairness Act, 28 U.S.C. § 1712, allowed the district court to award class counsel an attorney fee based on the lodestar method rather than the value of the redeemed coupons. Our answer to that question is yes.

In August 2010, Southwest Airlines stopped honoring certain in-flight drink vouchers issued to customers who had bought "Business Select" fares. Southwest customers Adam Levitt and Herbert Malone filed this suit against Southwest seeking to represent a class of similarly situated plaintiffs. The parties reached a settlement to provide replacement drink vouchers to all members of the class, as well as injunctive relief constraining how Southwest could issue vouchers in the future. The parties later negotiated an agreement on attorney fees for class counsel.

The district court certified the class and approved the class relief components of the settlement but awarded class counsel a smaller fee than they had requested. Class members Gregory Markow and Alison Paul objected to the settlement and now appeal its approval. They argue both that the district court erred by using the lodestar method and that the settlement is unfair to the class because it is too generous to class counsel. Class counsel filed a cross-appeal seeking a larger fee.

We affirm. While the fee aspects of this class settlement include two troublesome features—"clear-sailing" and

"kicker" clauses, both of which are explained and discussed below—the dominant feature of the settlement is that it provides class members with essentially complete relief. That degree of success on behalf of the class satisfied the district court that the class was not short-changed for the benefit of class counsel, and it satisfies us as well.

In one respect, however, we modify the terms of the settlement agreement. The financial and professional relationship between lead class counsel and one of the lead plaintiffs created a potential conflict of interest for both given their fiduciary duties to the class. This conflict should have been disclosed to the district court but was not. Where another lead plaintiff had no conflict and the class received essentially complete relief, however, we see no basis for decertifying the class or rejecting the settlement. Instead, we modify the settlement as approved to remove the $15,000 incentive award for the plaintiff and to reduce the lawyer's fee by the same amount.

I.   *Factual and Procedural Background*

For several years passengers who bought "Business Select" tickets on Southwest Airlines received vouchers good for a free in-flight alcoholic drink. The vouchers did not contain expiration dates. Some customers saved them for future use, and Southwest honored them, at least for a while. In August 2010, however, Southwest stopped honoring these older vouchers, announcing that each voucher was good only on the flight covered by the accompanying ticket.

Levitt and Malone filed suit against Southwest on behalf of a purported class of plaintiffs holding unredeemed Business Select drink vouchers that were suddenly worthless.

The class alleged claims for breach of contract, unjust enrichment, and violations of state consumer fraud laws. The district court quickly dismissed the unjust enrichment and statutory claims as preempted by the federal Airline Deregulation Act, 49 U.S.C. § 41713. The breach of contract claim remained.

The parties agreed to settle the breach of contract claim. The settlement provides for class certification and includes three types of relief. First, it requires Southwest to issue replacement coupons to each class member who files a claim form. The coupons are transferable and good for one year on any Southwest flight. Second, the settlement provides injunctive relief to prevent similar controversies over expiration dates if Southwest issues new coupons in the future. Third, the settlement provides for incentive awards to the two lead plaintiffs of $15,000 each.

After reaching this settlement of the merits, the parties negotiated the attorney fees for class counsel. These negotiations continued for four months and resulted in Southwest agreeing to pay, without objection, court-awarded attorney fees of up to $3,000,000 plus expenses of up to $30,000.

Class members Gregory Markow and Alison Paul objected to the settlement and the fee request. Markow argued that the settlement violated Federal Rule of Civil Procedure 23(e) because the fee award was disproportionate to class relief and because the fee settlement included "clear-sailing" and "kicker" clauses designed to shield the fee award from challenge. In a typical "clear-sailing" clause, the defendant agrees not to oppose a fee award up to a certain amount. A "kicker" clause provides that if a court reduces the attorney fee sought in a class action, the reduction benefits the de-

fendant rather than the class. Markow also argued that the attorney fee in this "coupon settlement" had to be based on the value of coupons actually redeemed by class members, under a provision of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1712.

The district court approved the class settlement as fair and reasonable, focusing primarily on the fact that the settlement provided essentially complete relief to the class. The district court determined that § 1712 applied to the settlement because the vouchers were "coupons" within the meaning of that provision, though the usual concerns about coupon settlements are minimal here because the class's claim itself is for the value of coupons that already required class members to buy plane tickets to use. The court further determined that § 1712 permits the use of the lodestar method to determine attorney fees based on coupon relief. The court used the lodestar method, with a multiplier of 1.5 for good results, to calculate a fee of $1,332,206.25, plus $18,522.32 in expenses. On counsel's Rule 59(e) motion, the district court held an evidentiary hearing and increased the fee award to $1,649,118 by using higher hourly rates.

These appeals followed, challenging the fairness of the settlement and the fee award. Objector Markow also raises a new issue on appeal, challenging approval of the settlement on the ground that an undisclosed conflict of interest on the part of class counsel and one lead plaintiff should preclude class certification. We consider first § 1712 regarding coupon settlements, then the overall fairness of the settlement, counsel's cross-appeal, and finally the conflict-of-interest issue.

II. *Fee Awards in Coupon Settlements*

When Congress enacted the Class Action Fairness Act, one of its targets was abusive "coupon settlements," where defendants and class counsel agree to provide coupons of dubious value to class members but to pay class counsel with cash. S. Rep. No. 109-14, at 16–20 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 16–20 (cataloging numerous abusive coupon settlements).

The potential for abuse is greatest when the coupons have value only if a class member is willing to do business again with the defendant who has injured her in some way, when the coupons have modest value compared to the new purchase for which they must be used, and when the coupons expire soon, are not transferable, and/or cannot be aggregated. See *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177–79 (9th Cir. 2013) (discussing some of these common concerns about coupon settlements); *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (same), citing Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 Geo. J. Legal Ethics 1395, 1396–97 (2005).

Identifying abusive coupon settlements, however, was easier than crafting legislation to prevent them. As one scholar observed, CAFA resulted from "years of intense lobbying (on both sides of the aisle by interest groups associated with both plaintiffs and defendants), partisan wrangling, and, following two successful filibusters, fragile compromises." Stephen B. Burbank, *The Class Action Fairness Act of 2005 in Historical Context: A Preliminary View*, 156 U. Pa. L. Rev. 1439, 1441 (2008). Such compromises make it especially important for courts, when told by either side that they have

secured a particular favor from Congress, to "ask to see the bill of sale." *Chicago Professional Sports Ltd. P'ship v. National Basketball Ass'n*, 961 F.2d 667, 671 (7th Cir. 1992). With that caution in mind, we turn first to whether § 1712 applies to this settlement and then to whether the district court had discretion to use the lodestar method to decide class counsel's fee.

### A. *A Coupon Settlement*

We hold first that § 1712 applies to this settlement. This provision applies to class action settlements that provide for "a recovery of coupons." We have rejected a narrow definition of "coupon" by rejecting, for purposes of § 1712, a proposed distinction between "vouchers" (good for an entire product) and "coupons" (good for price discounts). *Redman v. RadioShack Corp.*, 768 F.3d 622, 636–37 (7th Cir. 2014). Despite the protests of class counsel, the replacement vouchers for free drinks on Southwest flights are indeed "coupons" and hence this settlement is subject to § 1712. Like the district court, we recognize of course the irony that the subject of this class action is the value of coupons given to replace coupons. But also like the district court, we allow for that in considering whether the settlement is fair and reasonable.

### B. *Use of the Lodestar Method*

The more difficult issue is whether § 1712 allowed the district court to use the lodestar method to calculate the fee award for class counsel. Objector Markow contends that § 1712(a) prohibited use of the lodestar method and that the *only* permissible basis for a fee award here would be the value of the new coupons actually redeemed by class members. Under this view, use of the lodestar method in a coupon set-

tlement is not permissible (except to compensate counsel for obtaining injunctive relief, which had minimal value here).

That view was adopted by a divided Ninth Circuit panel in *HP Inkjet*. 716 F.3d at 1183–85. Judge Berzon in dissent argued that § 1712 gives a district court discretion to use the lodestar method to calculate attorney fees for both coupon and non-coupon relief. *Id.* at 1187 (Berzon, J., dissenting). In *Redman*, we acknowledged the difference of opinions in the Ninth Circuit but did not need to decide the issue. 768 F.3d at 635. We must now take sides.

The proper interpretation of § 1712 is a question of law that we review *de novo*. E.g., *Manning v. United States*, 546 F.3d 430, 432 (7th Cir. 2008). In essence, we agree with Judge Berzon, as the district court did here. One portion of § 1712, if interpreted in isolation, supports the *HP Inkjet* majority's view. But a broader view of the text and structure of § 1712, along with its legislative history and purpose, persuades us that § 1712 allows a district court discretion to use the lodestar method to calculate attorney fees even when those fees are intended to compensate class counsel for the coupon relief he or she obtained for the class.

Statutory interpretation begins with the language of the statute. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). Section 1712 provides in relevant part:

> (a) *Contingent Fees in Coupon Settlements*. If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the

coupons shall be based on the value to class members of the coupons that are redeemed.

(b) *Other Attorney's Fee Awards in Coupon Settlements*.

> (1) *In general*. If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

> (2) *Court approval*. Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.

(c) *Attorney's Fee Awards Calculated on a Mixed Basis in Coupon Settlements*. If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief

> (1) that portion of the attorney's fee to be paid to class counsel that is based

> upon a portion of the recovery of the
> coupons shall be calculated in accord-
> ance with subsection (a); and

> (2) that portion of the attorney's fee to
> be paid to class counsel that is not based
> upon a portion of the recovery of the
> coupons shall be calculated in accord-
> ance with subsection (b).

Objector Markow argues that subsection (a) prohibits the use of the lodestar method except to the extent a fee award is based on injunctive or other non-coupon relief in a settlement. Markow emphasizes the phrase "attributable to." Invoking dictionary definitions and even a philosophical monograph on John Locke indicating that "attributable to" means "caused by," Markow argues that the entire fee in this case was "caused by" the coupons under the settlement, so he concludes that the fee award for this settlement must be calculated using § 1712(a)'s percentage-of-coupons-used method. Under that view, the district court's use of the lodestar method would have been an error.

Yet § 1712(a) does not expressly prohibit use of the lodestar method. What the sentence does, unambiguously, is reject the most abusive method for calculating a fee in a coupon settlement: calculating the fee as a percentage of the *face value* of *all* the coupons issued. A little background makes this clear. Under the "common fund" doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion of the fund that is *made available* to the class rather than the amount actually *claimed by* the class. See *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,

743 F.3d 243, 247–248 (7th Cir. 2014). Because of low claims rates, the difference can be dramatic even where both the class recovery and the attorney fee are paid in cash.

As applied to coupon settlements, this method invites abuse. Class counsel and a defendant could agree on a settlement providing class members with coupons, which are valuable only if class members are willing to do business with the defendant again, and providing counsel with a cash payment calculated as a percentage of the face value of all coupons made available to class members, regardless of whether they are actually used or even likely to be used. (In this case, for example, class counsel estimated that the class would receive coupons with nominal values totaling $29 million, and they initially proposed a fee of $7 million, which might have seemed reasonable as less than 20% of the imaginary common fund that combined actual cash with the face value of the available coupons.)[1]

To protect against such abusive settlements, § 1712(a) requires that any percentage-of-recovery award in a coupon settlement be based upon a percentage of the value of the

---

[1] For another example, see the pre-CAFA settlement approved in *Todt v. Ameritech Corp.*, 763 N.E.2d 389 (Ill. App. 2002), discussed in *Sloop v. Ameritech Corp.*, No. EV 95-128-C H/L, 2003 WL 21989997 (S.D. Ind. Aug. 14, 2003). A settlement provided class members with discounts on certain telephone services—services they might or might not have wanted—and prepaid calling cards good only for nearly obsolete pay telephones, and even then good only for local toll ("intraLATA") calls. In valuing these discounts and nearly useless coupons, the Illinois courts used their full face values. All the cash in the *Todt* settlement went to the lawyers. *Sloop*, 2003 WL 21989997, at *2–3.

coupons actually redeemed by class members, not the nominal value of the coupons merely available to the class.

Subsection (a) does not, however, prohibit the use of the lodestar method for coupon settlements that do not provide injunctive relief. The Ninth Circuit majority in *HP Inkjet* reached the opposite conclusion because, like Markow, it thought that the term "attributable to" clearly means "caused by." We do not share their sense that the words "attributable to," and the words of subsection (a) more generally, have such a plain meaning. The phrase can also be understood as providing a choice: *if* any portion of the fee is attributed to the coupon benefits, *then* that portion of the fee must be based on the coupons used, but that is not the only method available. Taken on its own, subsection (a) is ambiguous on this point. It can be fairly read as the *HP Inkjet* majority read it, but that is not the only possibility.

The meaning of subsection (a) becomes clearer, however, when we look at how it fits together with the other fee provisions in subsections (b) and (c). Section 1712 provides a good example of the need to construe statutory language in context and with a view to its place in the overall statutory scheme. E.g., *King v. Burwell*, 576 U.S. —, 135 S. Ct. 2480 (2015); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013). In context, the meaning of subsection (a) becomes clearer and the Ninth Circuit's reading becomes less persuasive.

Subsection (b)(1) both contemplates and allows the possibility that "a portion of the recovery of the coupons" will *not* be used to determine the fee for class counsel, and that instead the lodestar method will be used:

> *If* a proposed settlement in a class action pro-
> vides for a recovery of coupons to class mem-
> bers, and a portion of the recovery of the cou-
> pons is *not* used to determine the attorney's fee
> to be paid to class counsel, any attorney's fee
> award shall be based upon the amount of time
> class counsel reasonably expended working on
> the action.

(Emphases added.) (The "amount of time class counsel rea-
sonably expended working on the action" refers to the lode-
star method.) The only alternative to the percentage of re-
covery method is provided by § 1712(b)(1), which quite
clearly authorizes the use of the lodestar method to calculate
attorney fees in coupon settlements.

This view of subsections (a) and (b) is the same described
in the key Senate committee report on the bill that became
CAFA. After summarizing the abuses of coupon settlements,
the committee explained:

> In order to address such inequities, Section
> 1712(a) states that in class action settlements in
> which it is proposed that an attorney fee award
> be based *solely* on the purported value of the
> coupons awarded to class members, the fee
> award should be based on the demonstrated
> value of coupons actually redeemed by the
> class members. Thus, if a settlement agreement
> promises the issuance of $5 million in coupons
> to the putative class members, but only 1/5 of
> potential class members actually redeem the
> coupons at issue, then the lawyer's contingen-

cy fee should be based on a recovery of $1 million—not a recovery of $5 million.

In some cases, the proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action. *Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief.* As is stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method of calculating attorney's fees.

S. Rep. No. 109-14, at 30, *as reprinted in* 2005 U.S.C.C.A.N. 3, at 30 (emphases added).

Subsections (a) and (b) thus fit together to force a choice between the lodestar method and a percentage of coupons redeemed. See *HP Inkjet*, 716 F.3d at 1192–93 (Berzon, J., dissenting). The one choice prohibited by subsection (a) is using a percentage-of-recovery method based on the face value of all coupons merely available to the class.

Subsection 1712(c), entitled "attorney's fee awards calculated on a *mixed* basis in coupon settlements," further clarifies the relationship between (a) and (b). Subsection (c) provides:

If a proposed settlement in a class action pro-
vides for an award of coupons to class mem-
bers and also provides for equitable relief, in-
cluding injunctive relief

> (1) that portion of the attorney's fee to
> be paid to class counsel that is based
> upon a portion of the recovery of the
> coupons shall be calculated in accord-
> ance with subsection (a); and

> (2) that portion of the attorney's fee to
> be paid to class counsel that is not based
> upon a portion of the recovery of the
> coupons shall be calculated in accord-
> ance with subsection (b).

Subsection (c) actually controls in this case since this set-
tlement provides for both an award of coupons and modest
equitable relief. Subsection (c) allows a combination of per-
centage-of-coupons-used and lodestar, but it does not re-
quire that *any* portion of the fee be based on the percentage
of coupons used. Subsection (c) allows the district court the
same discretion to use lodestar for the entire award that is
permitted under (b). In coupon settlements that include
some non-coupon relief, therefore, § 1712 allows three ap-
proaches to calculating attorney fees. First, a court may rely
solely on the percentage-of-recovery method as permitted in
subsection (a). Second, a court may rely solely on the lode-
star method as permitted in subsection (b). Third, a court
may use a combination of the approaches as provided in
subsection (c).

One basic tool in statutory interpretation is the canon against surplusage. E.g., *Marx v. General Revenue Corp.*, 568 U.S. —, 133 S. Ct. 1166, 1178 (2013). We believe it weighs in favor of giving the district court discretion to use the lodestar method here.

Under Markow's approach, also adopted by the Ninth Circuit majority in *HP Inkjet*, subsection (c) seems to become surplusage. If subsection (a) requires use of percentage-of-coupons-used for any fee award based on coupons, and if subsection (b) requires use of lodestar for non-coupon relief, as Markow argues, that leaves nothing for subsection (c) to do other than repeat subsection (a) and (b). "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx*, 133 S. Ct. at 1178.

The approach we adopt, also taken by the district court and by Judge Berzon in *HP Inkjet*, gives all three subsections different roles to play. Subsection (a) prohibits basing a per-centage-of-recovery fee on the face value of all coupons made available. Subsection (b) says that lodestar is the only permissible alternative to percentage-of-coupons-used. And subsection (c) allows, though does not require, a blend of the two methods when a coupon settlement also provides some equitable or cash relief.[2]

We hold that § 1712 permits a district court to use the lodestar method to calculate attorney fees to compensate

---

[2] The *HP Inkjet* majority charged the dissent with turning subsection (a) into surplusage, 716 F.3d at 1183, but that charge failed to take into account subsection (a)'s prohibition on the use of the face value of all available coupons to determine a percentage-of-recovery fee.

class counsel for the coupon relief obtained for the class. When a district court considers using the lodestar method in this manner, it will need to bear in mind the potential for abuse posed by coupon settlements and should evaluate critically the claims of success on behalf of a class receiving coupons, as Judge Kennelly did here.[3]

III. *The Fairness of the Settlement*

The district court approved this settlement after finding it fair and reasonable for the class. On appeal we review that approval for an abuse of discretion, though we have said many times that we expect district courts to scrutinize such settlements carefully in light of the conflicts of interest inherent in class litigation. See, e.g., *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652–53 (7th Cir. 2006). We begin by addressing two issues raised by the structure of the settlement and then turn to counsel's cross-appeal on the amount of attorney fees. We find no abuse of discretion in the district court's handling of these matters.

A. *The Structure of the Settlement*

No party disputes the adequacy of class relief. This is not a case where coupons of dubious value will be provided to compensate for a loss of cash. The class lost the value of drink coupons. The settlement provides replacement drink coupons, on a one-for-one basis. The claims process is easy, and the replacement coupons will remain valid for one year. There is also a happy alignment of interests between class

---

[3] Because this opinion creates a circuit split on the interpretation of 28 U.S.C. § 1712, we have circulated it to all active judges under Circuit Rule 40(e), and no judge in active service has voted to rehear the case en banc.

members and Southwest. Southwest has no incentive to insist on a stringent claims process. Every replacement coupon can be used only by a customer who buys a plane ticket. Southwest should benefit from every one that is actually used. Such benefits for a defendant under a coupon settlement are usually a reason for caution if not skepticism. This case is different, though, because Southwest would have received the same benefits from the old coupons.

Serendipitous or not, such essentially complete relief for the class is the model of an adequate settlement. The class members will receive everything they reasonably could have hoped for. While some replacement coupons might never be used, the same could be said of the original coupons. Nevertheless, the objectors argue the settlement is unfair in two ways. The first focuses on the ratio of class relief to attorney fees in this case. The second focuses on the clear-sailing and kicker clauses in the fee agreement.

### 1.  *The Ratio of Class Relief to Attorney Fees*

The objectors argue first that Southwest's willingness to pay up to $3,000,000 in cash to class counsel—after agreeing on coupon relief for the class members—shows that the negotiated class settlement short-changed the class by leaving money on the table. Much of that value, argue the objectors, should have gone to the class.

In most cases this would be a powerful argument. Separating the negotiations over class relief and attorney fees does not remove the possibility that counsel will negotiate for their own benefit at the expense of the class. "In other words, the negotiation of class counsel's attorneys' fees is not exempt from the truism that there is no such thing as a

free lunch." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

Judicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost, particularly in classes certified under Rule 23(b)(3) that seek primarily monetary relief. See *Eubank v. Pella Corp.*, 753 F.3d 718, 719–20 (7th Cir. 2014). While that assumption may not hold in all cases, conflicts of interest are inherent in class action suits. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014).

These conflicts come to the fore when attorney fees for class counsel are the issue. "The defendant … is interested only in the bottom line: how much the settlement will cost him." *Id.* We assume class counsel, on the other hand, "is interested primarily in the size of the attorneys' fees provided for in the settlement." *Id.* For these actors, but not for class members, the ideal settlement may be a moderate sum favorable to the defendant but disbursed mostly to class counsel.

While this argument often has considerable force, it has little force here. What makes this settlement so distinctive, and what has eased both the district court's and our concerns about the risk of self-dealing by class counsel, is that the class members will receive essentially everything they could have hoped for. As the district court put it, "the class members are getting back exactly what they had before, an unexpired drink voucher." *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, at *4 (N.D. Ill. Oct. 3, 2013). It is an exceptional settlement that actually makes the

class whole. When counsel come away from the negotiating table with everything the client could hope for, they should be compensated accordingly. That is what happened in this case. No class members have legitimate or even plausible claims to more than they will receive under the settlement.

Objectors argue, though, that the class was not actually made whole since it did not recover for its unjust enrichment and statutory claims. As noted, these claims were dismissed early in the litigation because they are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, a principle which is well established by Supreme Court decisions. See *Northwest, Inc. v. Ginsberg*, 572 U.S. —, 134 S. Ct. 1422, 1426 (2014) (state-law claim for breach of covenant of good faith and fair dealing was preempted); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 221–22 (1995) (consumer fraud claims were preempted, but breach of contract claims were not); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 391 (1992) (general consumer protection statutory claims were preempted as applied to airline fare advertisements). Class members could not reasonably have hoped to recover for these meritless claims, and the district court appropriately gave them no weight in evaluating the fairness of the settlement.

2.  *Clear-Sailing and Kicker Clauses*

The settlement agreement between Southwest and the class also includes so-called "clear-sailing" and "kicker" clauses. Southwest agreed not to contest a fee request not exceeding $3 million (clear-sailing), and any reduction from the requested fee (roughly $1.35 million in this case) benefits Southwest rather than the class (the kicker). The Ninth Circuit has called these clauses "subtle signs" of settlement un-

fairness. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

We have used stronger language lately, expressing deep skepticism about such clauses, which seem to benefit only class counsel and can be signs of a sell-out. See *Redman*, 768 F.3d at 637; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786–87 (7th Cir. 2014). Clear-sailing and kicker clauses weigh substantially against the fairness of a settlement and call for "intense critical scrutiny by the district court." *Redman*, 768 F.3d at 637.

Like the Ninth Circuit, however, we have stopped short of holding that clear-sailing and kicker clauses are *per se* bars to settlement approval. We again stop short of that *per se* rule. The possibility of exceptional cases like this one is precisely what persuaded us to allow flexibility that a *per se* rule would bar. At the risk of undue repetition, this settlement makes the class whole, and the district court carefully scrutinized—and significantly reduced—the fee request. Even if the court had rejected the settlement, it is hard to imagine the class receiving any better result after further negotiations or a trial. The district court therefore did not abuse its discretion by approving the settlement as fair and reasonable.

B. *The Cross-Appeal by Class Counsel*

Southwest Airlines was willing to pay a fee of up to $3,000,000 without objection. Class counsel argue that the district court abused its discretion by awarding the lower amount of $1.65 million rather than deferring to the amount agreed in the negotiations between Southwest and class counsel. Judicial deference to the results of private negotiations is undoubtedly appropriate for many settlements, but

not for class action settlements, including their attorney fee terms. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Staton*, 327 F.3d at 964; see also *Eubank*, 753 F.3d at 719–20.

The district judge carefully applied the lodestar method, as described above. In doing so the judge accommodated the most reasonable points raised by class counsel and increased the initial fee award. The court did not abuse its discretion in awarding $1.65 million using the lodestar method.[4]

---

[4] We cannot help noting our disappointment with class counsel's briefing in one respect that should remind both counsel and the court of the need to check quotations and citations. For deceptive use of an ellipsis, this was a classic. Counsel cited *Staton*, 327 F.3d at 964, to support their argument that we should defer to the results of their fee negotiations with Southwest. That citation included the following parenthetical quotation:

> (where 'defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class ... the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated'; the issue is whether the fee is facially fair and reasonable).

Corrected Principal and Response Br. of Plaintiffs-Appellees at 15.

The ellipsis put together parts of two sentences—separated by no fewer than 1,150 words!—to reverse the true meaning. The first sentence, quoted in full, says exactly the opposite of what class counsel claimed: "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement *does not detract from the need carefully to scrutinize the fee award*." 327 F.3d at 964 (emphasis added). The material counsel quoted *after* the ellip-

IV. *Adequacy of Class Representation and Potential Conflicts of Interest*

Finally, the objectors assert that the settlement class should not have been certified because one of the four Rule 23(a) requirements for class certification—"the representative parties will fairly and adequately protect the interests of the class"—was not satisfied. Fed. R. Civ. P. 23(a)(4). Joseph Siprut, lead class counsel in this case, and Adam Levitt, one of two class representatives, are co-counsel in a pending class action in California, *Hodges v. Apple, Inc.*, No. 14-15106 (9th Cir. filed Jan. 21, 2014). Siprut and Levitt did not disclose this relationship to the district court, and the Rule 23(a)(4) issue thus was not presented there.

The objectors urge us to take up this issue for the first time on appeal. Class counsel deferred to Southwest to address the issue. Southwest argued that any conflict as to Levitt does not matter because plaintiff Malone adequately represented the class, and that the objectors waived their objection to Levitt's conflict of interest because they should

---

sis appears more than two published pages after the phrase before the ellipsis. And in context the later phrase again bore a very different meaning:

> And, since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated. But here, there was no such inquiry at all.

327 F.3d at 966. Finally the brief's assertion that the Ninth Circuit said the issue was whether the fee is "facially" fair and reasonable is baseless.

have used Pacer or Google to discover the relationship between Siprut and Levitt before this appeal.

As a general rule, we have a strong aversion to considering issues on appeal that were not raised in the district court, at least if the issue does not control subject-matter or appellate jurisdiction. The general rule helps ensure orderly and fair process so that litigants are not "surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Niedert v. Rieger*, 200 F.3d 522, 527 (7th Cir. 1999), quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). While we have discretion to decide issues of law not argued in the district court, see *Dechert v. Cadle Co.*, 441 F.3d 474, 476 (7th Cir. 2006), that discretion should be used sparingly.

The conflict of interest issue here presents a rare instance where it makes sense for us to consider an issue not raised in the district court, so we reject the waiver argument. Siprut and Levitt should have disclosed their relationship to the district court. Class members were not obliged, on penalty of waiver, to search on their own for a conflict of interest on the part of a class representative.

In most cases, class members can expect a defendant like Southwest Airlines to test the adequacy of a class representative, with the district court as a backstop to protect them. In this case, however, class counsel and class representatives reached the settlement with Southwest before class certification, so Southwest lost its incentive to challenge the adequacy of class representation. In addition, class members like the objectors should be able to expect class counsel and class representatives to disclose such prior professional, financial, personal, or other relationships between class counsel and a

class representative that could reasonably be thought relevant to the ability of the representative to act on behalf of the class, if need be by disagreeing with class counsel. See *Eubank v. Pella Corp.*, 753 F.3d 718, 721–22 (7th Cir. 2014) (rejecting class representative who was father and father-in-law of class counsel); *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90, 95 (7th Cir. 1977) (rejecting class representative who was member of class counsel's law firm and another who was brother of class counsel).

One foundation of class action law is that the class representative has an obligation to represent the interests of the class in dealings with both the defendant and class counsel. E.g., *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880, 882 (7th Cir. 2000). Class representatives need to be capable of saying no if they believe counsel are failing to act in the best interests of the class. Accordingly, one purpose of the adequacy inquiry under Rule 23(a)(4) is "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); see also *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (adequacy of representation is essential to protect due process rights of absent class members); *General Telephone Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 331 (1980) ("the adequate-representation requirement is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class"); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) (rejecting proposed class representative who was close friend and former stockbroker of class counsel; relationship "casts doubt on [representative's] ability to place the interests of the class above that of class counsel").

The adequacy of class representatives is an issue that can be examined throughout the litigation. *Susman*, 561 F.2d at 89–90 ("Basic consideration of fairness require[s] that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment."), quoting *National Ass'n of Regional Medical Programs v. Mathews*, 551 F.2d 340, 344–45 (D.C. Cir. 1976). In these appeals, the issue has been aired adequately for us to address it, and we think the best course is simply to resolve it without further delay.

This class has been represented adequately, at least by plaintiff Malone. We base this conclusion on the recurring theme of this opinion, the unusual degree of success for the class in the settlement. A remand for decertification or further exploration of the issue would not benefit the class but would only delay it from receiving full compensation under this settlement. The class has been made whole and class counsel have earned their fees by achieving that result for the class, so the settlement approval should be affirmed. The failure to disclose the relationship by Siprut and Levitt should be addressed in another way.

Siprut and Levitt both know they are fiduciaries for the class. They should have known to disclose their relationship and the potential conflict it posed. See *Eubank*, 753 F.3d at 723 ("Class representatives are … fiduciaries of the class members, and fiduciaries are not allowed to have conflicts of interest without the informed consent of their beneficiaries"). The professional and financial relationship between Siprut and Levitt should have been disclosed to the district court. See, e.g., *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D.

324, 328 (N.D. Ill. 1993) (denying class certification where named plaintiff served as co-counsel with class counsel in numerous other cases).

In affirming a district court decision denying class certification we have implicitly rejected the proposition that "a showing of actual danger of conflict of interest rather than the mere possibility of a conflict of interest is required to support a finding that a fiduciary will not adequately represent the interest of others." *Susman*, 561 F.2d at 89. In that same case we also "decline[d] to adopt a per se analysis" of conflicts of interest in this context. *Id.* at 93–94.

We think it is clear that Siprut and Levitt were laboring under at least a potential conflict of interest that should have been disclosed to the district court and other interested parties. The fact that Siprut's relationship with Levitt was divulged during a deposition does not suffice. District judges do not and could not read full transcripts of every deposition taken in every case on their dockets, even if all such depositions were filed with the court, which most are not. The standard here is not constructive disclosure, but clear and direct disclosure to the district judge.

If there were indications that the class had been adversely affected by this failure to disclose, the consequences would be more severe. See *Eubank*, 753 F.3d at 729 (lamenting "eight largely wasted years" of litigation and how much more still needed to be done in part due to the need to replace the lead plaintiffs). Our message to the class action bar is short and simple: when in doubt, disclose. In this rare case, however, where the class is receiving full compensation under the settlement agreement, a more modest response is appropriate.

Plaintiff Levitt should not receive a $15,000 incentive award. His failure to disclose was an important failure in protecting the interests of the class. For the same reason, Siprut's fee should be reduced by the same amount.

Accordingly, we modify the district court's judgment to eliminate the $15,000 incentive award for plaintiff Levitt and to reduce the fee award by $15,000, which should be taken from Siprut's individual share of the fee award. As modified, the judgment of the district court is AFFIRMED.