In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 17-3541

IN RE: SOUTHWEST AIRLINES VOUCHER LITIGATION

ADAM J. LEVITT and HERBERT C. MALONE,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees*,

*v.*

SOUTHWEST AIRLINES COMPANY,

*Defendant-Appellee*.

APPEAL OF:
GREGORY MARKOW,

*Objector-Appellant*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CV-8176 — **Matthew F. Kennelly**, *Judge*.

_____

ARGUED MAY 31, 2018 — DECIDED AUGUST 2, 2018

_____

Before FLAUM, MANION, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This is the third appeal regarding
attorney fees to stem from a class action against Southwest

Airlines after it stopped honoring in-flight drink vouchers for customers who bought "Business Select" fares. We thought the case was over after the first appeal, *In re Southwest Airlines Voucher Litigation* (*Southwest I*), 799 F.3d 701 (7th Cir. 2015), because the settlement made the customers whole by giving them a replacement voucher. At least, it made whole the small group of customers who submitted claims.

After the appeal, class counsel—Siprut PC—requested additional fees. The district court awarded them. Markow, the objector, appealed but dismissed the appeal after Southwest tripled the relief to the class—by giving two additional vouchers for every one claimed—to narrow the gap between the amount of supplemental fees Siprut would receive and the value of the relief the class would actually receive. The district court approved that agreement. Objector Markow then moved for fees and an incentive award. The district court denied the motion, reasoning that requiring Siprut to pay Markow's fees out of Siprut's supplemental fee award "undoes the settlement." *In re Southwest Airlines Voucher Litigation* (*Southwest II*), 2017 WL 5295372, at *5 (N.D. Ill. Nov. 13, 2017). Markow has appealed. We reverse and remand. Unless the parties to a class action settlement agreement, including objecting parties, expressly agree otherwise, settlement agreements should not be read to bar objectors from requesting fees for their efforts in adding value to a settlement.

I.  *Factual and Procedural Background*

In the first appeal, we held that 28 U.S.C. § 1712, enacted as part of the Class Action Fairness Act allowed the district court to award Siprut an attorney fee based on the lodestar method rather than the value of the redeemed vouchers. *Southwest I*, 799 F.3d at 710. We affirmed the district court's

approval of the settlement. *Id.* at 713. Siprut cross-appealed, arguing that the district court abused its discretion by awarding less in fees for Siprut ($1,649,118) than the amount that Southwest agreed not to oppose ($3 million). We affirmed but modified the judgment to reduce one Siprut lawyer's individual share of the fee award because he failed to disclose a potential conflict of interest resulting from the fact that he and one of the class representatives were co-counsel in another pending class action. *Id*. at 714–16.

Back in the district court, Siprut made an astonishing request for supplemental fees. For its work on the motion to amend the fee award and the prior appeal, Siprut essentially requested the difference between the $3 million Southwest agreed not to oppose and the amount we affirmed as reduced in the prior appeal: $1,365,882. Siprut got to that number by requesting the same 1.5 multiplier for its post-judgment time as for the initial fee award and by claiming 572 hours in attorney time for the motion to amend and more than 970 hours of attorney time for the appeal—totals that the district court rightly called "grossly excessive." The district court also noted its impression that "some of the originally hoped-for $3,000,000 that Southwest agreed not to oppose is still on the table, and plaintiffs' counsel are trying to find a way to get the rest of it." *In re Southwest Airlines Voucher Litigation*, 2016 WL 1623191, at *5 (N.D. Ill. Apr. 25, 2016). The district court declined to award a multiplier for the post-judgment work but nevertheless awarded Siprut one-third of the requested amount: $455,294 plus expenses. *Id.*

Markow moved for reconsideration under Rule 59 and, alternatively, for vacatur of the settlement approval and accompanying fee orders under Rule 60(b). The district court

granted the motion for reconsideration and vacated the additional fee award so that the class would receive notice of and a chance to object to it. *In re Southwest Airlines Voucher Litigation*, 2016 WL 3418565, at *2 (N.D. Ill. June 22, 2016). Markow appealed.

Before the parties even briefed the second appeal on the merits, they reached a deal. In exchange for Markow dismissing his appeal, Siprut agreed to take half of the supplemental fee award ($227,647 plus $3,529.68 in expenses) and Southwest agreed to triple the relief to the class (two additional vouchers for every one claimed). Nevertheless, the district court was also told—apparently for the first time—that the correct number of vouchers claimed under the original settlement was *less than one third* what the parties had told the district court earlier about the original settlement it had approved. The district court approved the new settlement. Southwest distributed the vouchers and paid Siprut.

Markow then moved for $80,000 in attorney fees and an incentive award of $1,000 to come out of the more than $1.8 million attorney fee award to Siprut. Markow describes his request as "a fraction of his lodestar and less than 5% of class counsel's total award." The district court denied the motion. *Southwest II*, 2017 WL 5295372, at *5. Markow has appealed that denial.

II. *Analysis*

We review attorney fee awards in class actions for abuse of discretion. *Birchmeier v. Caribbean Cruise Line, Inc.*, — F.3d —, —, 2018 WL 3545146, at *3 (7th Cir. July 24, 2018), citing *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). The deferential standard of review stems from the fact

that "[d]istrict courts are far better suited than appellate courts to assess a reasonable fee in light of the case's history." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991). A district court abuses its discretion when it "reaches an erroneous conclusion of law, fails to explain a reduction or reaches a conclusion that no evidence in the record supports as rational," *id.*, and "we review a district court's legal analysis and methodology de novo," *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009), citing *Jaffee v. Redmond*, 142 F.3d 409, 412–13 (7th Cir. 1998), and *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000). When the facts are undisputed (as here, where neither party argues that the agreement is ambiguous), contract interpretation is a legal question. *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 631 (7th Cir. 2010), citing *PSI Energy, Inc. v. Exxon Coal USA, Inc.*, 17 F.3d 969, 971 (7th Cir. 1994).

The underlying settlement agreement and the agreement to settle the second appeal (reflected in the joint status reports) are silent on the issue of objector's fees. Given that silence, we look to the law. See Fed. R. Civ. P. 23(h) ("the court may award reasonable attorney's fees and nontaxable costs that are authorized by law *or* by the parties' agreement") (emphasis added). Objectors who add value to a class settlement may be compensated for their efforts. Unless the parties expressly agree otherwise, settlement agreements should not be read to bar attorney fees for objectors who have added genuine value. Because the equitable common-fund doctrine applies, Markow's counsel should receive fees for improving the settlement.

A.  *Settlement Agreement and Status Reports*

The original settlement agreement says nothing about objector fees. It defined the term "Attorneys' Fees and Expenses" to mean funds "*awarded to Class Counsel* by the Court, *for distribution to Class Counsel*." Dkt. 88 at 2, ¶C (emphasis added). It also set a ceiling and a floor for fees that Southwest would pay, with court approval, and implied that the parties would continue to negotiate. The agreement also provided that Southwest would not pay any amounts not provided for in the agreement and that Southwest had the right to terminate the settlement if the district court ordered it to pay any additional amounts. Eventually, the parties agreed that Southwest would pay up to $3 million in fees and $30,000 in costs. Southwest argues that awarding Markow fees out of the amount already paid to Siprut would undo the underlying settlement agreement. That is incorrect. Southwest will not have to pay anything more than it already has: Markow's fees will come out of the amount Southwest has already paid to Siprut.

The joint status reports leading up to the settlement of the second appeal are similarly silent. Other than evidence that Markow's lawyers said they would not take fees in exchange for the dismissing the appeal, no witness testified at the evidentiary hearing that the parties discussed an attorney fee award for Markow in the discussions leading up to the filing of the status reports. See *Southwest II*, 2017 WL 5295372, at *3–4 (summarizing hearing evidence). Because those reports are silent, the district court made a legal error by reading them to bar Markow's request.

The final status report represented that "Class Counsel *will receive* … $227,647.00" in supplemental fees. That statement does not bar Markow from filing his own fee motion to

recover out of the total amount set aside for Siprut. And it does not mean that Markow agreed to take nothing. Siprut argues that Markow waived his claim to fees. But he did not. The non-profit Center for Class Action Fairness "does not seek to obtain payments for withdrawing objections and appeals to settlement approvals," so Markow's lawyer told Siprut that "Markow and his attorneys are not asking for any payment to themselves *as part of these discussions*." Dkt. 374-1 at 2 (emphasis added). Markow's lawyer said only that he did not seek fees as part of the discussions regarding the dismissal of the second appeal. He did not say that he never intended to seek fees.

To avoid these problems, the parties should have addressed objector's fees up front as part of the comprehensive settlement negotiations. That they failed to do so does not doom Markow's fee request. The roundabout order of operations Markow chose is problematic: it raises the potential for an objector to agree to fees for Siprut, to say nothing about objector's fees, and then to sandbag the settlement by requesting fees later. But settlement agreements work both ways, and the parties never expressly agreed to bar Markow's request.

B.  *Common-Fund Doctrine*

Background contractual and equitable principles fill the gap left by the parties' agreements. The first of those principles is that, because of the skewed incentives in some class action settlements, objectors who bring those incentives back into balance by increasing a settlement's benefit to a class may be compensated for their efforts. See, e.g., *Kaufman v. American Express Travel Related Services Co.*, 877 F.3d 276, 287–88 (7th Cir. 2017) (affirming attorney fee award for intervenors who contributed to settlement approval); *Eubank v. Pella Corp.*, 753 F.3d

718, 720 (7th Cir. 2014) (noting that objectors who improve set-tlement "will receive a cash award that can be substantial"), citing *In re Trans Union Corp. Privacy Litigation*, 629 F.3d 741 (7th Cir. 2011) (increasing class counsel's fee award out of re-lief awarded to class); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (objectors' lawyers may be entitled to "reasonable professional fee" where they "render valuable al-beit not bargained-for services in circumstances in which high transaction costs prevent negotiation and voluntary agree-ment"), citing *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998), *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568, 571 (7th Cir. 1992), and Saul Levmore, *Explaining Restitu-tion*, 71 Va. L. Rev. 65, 66 (1985). "The principles of restitution that authorize such a result also require, however, that the ob-jectors produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class." *Reynolds*, 288 F.3d at 288, citing *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) (per curiam), and additional cases; see also *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) (distinguishing be-tween intervenors who raise value of settlement and those who "cause expensive delay in the hope of getting paid to go away").

This recognition is consistent with a second principle: the common-fund doctrine. That doctrine provides that "a liti-gant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a rea-sonable attorney's fee from the fund as a whole." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013), quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); accord, *Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000), citing *Boeing*, 444 U.S. 472, and additional

cases. Fee awards for class counsel are part of a constructive common fund because they are a benefit to the class. See *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) ("value of the settlement" is "defined as the sum of the awards to the class and to its lawyers"); see also *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("relevant" ratio for "assessing the reasonableness of the attorneys' fee" in coupon class action settlement "is the ratio of (1) the fee to (2) the fee plus what the class members received"); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 821 (3d Cir. 1995) ("private agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case").

The common-fund doctrine applies as a default rule unless the parties draft their settlement agreement to depart from it. Cf., e.g., *US Airways*, 569 U.S. at 101–05 (permitting ERISA plan participant to raise common-fund doctrine as equitable defense to plan administrator's reimbursement action where language from summary plan description was silent on allocation of attorney fees). "Contracts are enacted against a background of common-sense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear expression of the parties' contrary intent." *Id.* at 102 (cleaned up), quoting *Wal-Mart Stores*, 213 F.3d at 402, and citing 11 R. Lord, Williston on Contracts § 31:7 (4th ed. 2012), and Restatement (Second) of Contracts § 221 (1979).

Because these parties did not address objector's fees, we "interpolate" the common-fund doctrine "to avoid wreaking unintended consequences," *Wal-Mart Stores*, 213 F.3d at 402,

like the one that would result here. It would be inequitable for Markow's lawyer to receive nothing despite negotiating, in exchange for dropping the second appeal, a tripling of relief for the class and a significant cut to Siprut's fees. Markow's $80,000 fee request is a modest 10% of the market value of the additional vouchers, $825,630. The request is even more modest if it is calculated based on the higher $5 face value of the vouchers. Either calculation shows that this is not a case where an objector ran up a tab with minimal value added. E.g., *Mirfasihi v. Fleet Mortgage Corp.*, 551 F.3d 682, 687–688 (7th Cir. 2008) (denying objector's "preposterous" request for 40 times the fees awarded by district court because "improvement that the objectors produced in this case, minus the detriment caused by their courtroom antics, barely justified the modest fee that the judge awarded them").

Despite this remand, our message is clear: we expect this case to end "so that the tail can stop wagging the dog." *Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). Other than the award of fees to Markow, there will be no more fees in this case: Siprut represented to us at oral argument that they will not seek more fees after this appeal. That is wise. We find it difficult to reconcile Siprut's rapacious requests for fees in the district court with our decision in the prior appeal that reduced its already generous fee award as a modest penalty for failing to disclose a potential conflict of interest. After that appeal, the extraordinarily inflated value of the settlement came to light (the actual number of vouchers claimed was less than a third of what the district court was told), and Southwest tripled the relief to the class despite our belief that the class could have done no better. Based on these unexpected developments, we would have been inclined to reverse *any* award of supplemental fees in the second appeal—especially given

hours that the district court called "grossly excessive." But we have no jurisdiction to address the supplemental fee award because Markow dismissed that appeal. "No matter the outcome of this appeal, class counsel will receive more than the $1.65 million fee award that this Court decided to reduce as a penalty for class counsel's failure to disclose his business relationship with one of the two named plaintiffs." Reply Br. at 1. That is troubling.

We could expand our jurisdiction by taking the extraordinary step of recalling our mandate from the earlier appeal. E.g., *Patterson v. Crabb*, 904 F.2d 1179, 1180 (7th Cir. 1990) (noting appellate court's inherent authority to recall mandate "only in exceptional circumstances"), citing *Johnson v. Bechtel Associates Prof'l Corp.*, 801 F.2d 412, 416 (D.C. Cir. 1986) (per curiam), *American Iron & Steel Institute v. EPA*, 560 F.2d 589, 593–95 (3d Cir. 1977), *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir. 1988), and 16 Wright & Miller, Federal Practice and Procedure § 3938 (1977). We decline to do so because Southwest has distributed the vouchers and paid Siprut. It is time to end this litigation.

We REVERSE the denial of Markow's motion for fees and an incentive award and REMAND for entry of a judgment granting Markow's request, payable from Siprut.