In the

# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 17-1626, 17-1778, 17-1953, 17-1969, 17-1984 & 17-2857

GRANT BIRCHMEIER, *et al.*,

*Plaintiffs-Appellees*,

*v.*

CARIBBEAN CRUISE LINE, INC., *et al.*,

*Defendants-Appellants.*

APPEALS OF:

 CARIBBEAN CRUISE LINE, INC.; VACATION OWNERSHIP MARKETING TOURS, INC.; THE BERKLEY GROUP, INC.; FREEDOM HOME CARE, INC.; KEVIN MCCABE

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 4069 — **Matthew F. Kennelly**, *Judge.*

_____

ARGUED FEBRUARY 14, 2018 — DECIDED JULY 24, 2018

_____

Before EASTERBROOK and ROVNER, *Circuit Judges*, and GRIESBACH, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. During 2011 and 2012 a million people received phone calls asking them to take political surveys in exchange for a chance to go on a free cruise. Some recipients filed a class action under the Telephone Consumer Protection Act, 47 U.S.C. §227, seeking damages for these unsolicited communications. Caribbean Cruise Line, Vacation Ownership Marketing Tours, and the Berkley Group were named as defendants on the theory that, though they had not placed the calls, they had directed them and thus are vicariously liable. (The plaintiffs also sued the caller, which has not participated in these appeals.) The district court certified a class under Fed. R. Civ. P. 23(b)(3). Later it granted partial summary judgment in the plaintiffs' favor and scheduled a trial. 179 F. Supp. 3d 817 (N.D. Ill. 2016).

On the eve of trial the parties settled. Plaintiffs agreed to release their claims against all defendants and any of the defendants' "agents [or] independent contractors". In exchange defendants agreed to pay into a fund no less than $56 million and no more than $76 million. The total will depend on the number of approved claims that class members submit. Out of the fund will come payments to the class, incentive awards to the named representatives, about $2 million in administrative expenses, and attorneys' fees. The class will receive payments in two rounds. If some claimants do not cash the checks sent during the second round, money will be left over, and those remaining funds will go to "an appropriate *cy pres* recipient" to be approved by the district court.

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

(The district court has not yet determined whether that occurs, so we need not wait for *In re Google Referrer Header Privacy Litigation*, 869 F.3d 737 (9th Cir. 2017), cert. granted under the name *Frank v. Gaos*, 138 S. Ct. 1697 (2018).)

Over the objections of Kevin McCabe, who says he is in the class, the district court approved the settlement, estimating that each claimant will receive $400. 2017 U.S. Dist. LEXIS 29400 (N.D. Ill. Mar. 2, 2017). After approving the settlement, the court entered judgment under Fed. R. Civ. P. 58. It also awarded attorneys' fees to class counsel under Fed. R. Civ. P. 23(h). The award gives counsel 36% of the first $10 million paid into the fund, 30% of the next $10 million, 24% of the next $36 million, and 18% of any additional recovery. 2017 U.S. Dist. LEXIS 54080 (N.D. Ill. Apr. 10, 2017).

We have three sets of appeals: (1) defendants and a member of the class, Freedom Home Care, contend that the award of fees overcompensates class counsel; (2) Freedom Home Care wants an incentive award and attorneys' fees for its role in objecting to class counsel's fees; and (3) McCabe complains that the settlement's approval was improper. Before we discuss the merits of these appeals, we must ensure that we have jurisdiction.

The appeals are within our jurisdiction only if they challenge "final decisions" of the district court. 28 U.S.C. §1291. A decision on the merits is final only if it "resolves *all* claims of *all* parties". *Domanus v. Locke Lord LLP*, 847 F.3d 469, 477 (7th Cir. 2017) (emphasis in original). The caller (or rather, three entities that allegedly acted as the caller—Economic Strategy LLC, Economy Strategy Group, Inc., and a political committee named Economic Strategy Group) did not participate in the settlement. But the settlement releases plaintiffs'

claims against the settling defendants' "agents [or] independent contractors". The parties to these appeals tell us that the caller was an "agent" or "independent contractor" of the other defendants for the purpose of this release. Consistent with that understanding, the district court's judgment states: "The Court hereby dismisses the Action"—the whole action, not just some of it—"on the merits and with prejudice". This judgment disposes of the claims against all parties, not just the claims against the settling parties, so it is a final decision on the merits. Freedom Home Care's challenge to the denial of an incentive award and fees therefore falls within the scope of §1291, as does McCabe's appeal. Cf. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

Whether the same can be said about defendants' and Freedom Home Care's appeal of the decision awarding fees to class counsel requires more discussion. A decision about fees, if final, is appealable separately from the merits. See *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988). The district court wrote:

> Because the process for approving claims is still ongoing, the Court awards at this time only those attorney's fees corresponding to the minimum amount defendants will be required to pay into the common fund. As discussed above, that fee amount is $14.76 million [that is, the sum of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million]. Class counsel may petition the Court for the remainder of the fee award upon conclusion of the claims-approval process.

2017 U.S. Dist. LEXIS 54080 at *32. This decision does not quantify the total fees that counsel will collect. It instead awards a portion of the fees ($14.76 million) and tells counsel to come back for more if the size of the pot grows.

Interim awards of attorneys' fees can hardly be called final, cf. *Sole v. Wyner*, 551 U.S. 74 (2007), and such awards typically are not appealable under §1291. See, e.g., *Dupuy v. Samuels*, 423 F.3d 714, 717 (7th Cir. 2005); *People Who Care v. Board of Education*, 272 F.3d 936, 937 (7th Cir. 2001). But an award may be final if the district court lays out a formula for calculating the award's amount. See, e.g., *Hyland v. Liberty Mutual Fire Insurance Co.*, 885 F.3d 482, 484 (7th Cir. 2018); *Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1401–02 (7th Cir. 1992); *Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir. 1985). See also Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15B *Federal Practice & Procedure* §3915.2 at 279 (2d ed. 1992) ("[M]erely 'ministerial' proceedings to calculate a specific award do not defeat finality."). Such an award leaves some math but nothing for the district court to decide.

This award does exactly that. Though the district court told counsel to "petition the Court for the remainder of the fee award," it also prescribed a formula for that remainder: 18% of the amount recovered over $56 million. The court had considered other means, such as using a multiplier of 0.15 instead of 0.18. But it landed on 18%, explained its choice, and stated that "the Court awards class counsel … 18% of the remainder." 2017 U.S. Dist. Lexis 54080 at *28–31. The total award is not yet known only because the number of approved claims is not yet known. Once the parties know that number, computing the remaining fees will be a mechanical exercise. Some tasks unrelated to the calculation of fees remain for the district court, such as (perhaps) choosing a recipient for funds unclaimed after the second round of payments. But as a practical matter the district court is fin-

ished with the litigation about class counsel's fees, so the award is final for the purpose of §1291.

More: The fact that the award postdates the judgment creates a problem distinct from cases about prejudgment awards. A litigant who wishes to challenge a prejudgment award can do so by timely appealing the judgment. See *Dupuy*, 423 F.3d at 717; *Badger Pharmacal, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 626 (7th Cir. 1993). But when, if not now, could the defendants in this case challenge the postjudgment award? Suppose that months from now the parties determine that only $56 million goes into the fund. Then there will not be any remaining fees for class counsel to seek (18% of nothing is nothing) or any subsequent award from which defendants could appeal. That possibility and its variations, if combined with a conclusion that the original award is not final, would put defendants in a bind. They could not timely appeal the original award, because a second might follow after the expiration of the 30-day deadline to appeal the first. See 28 U.S.C. §2107(a). But a second might *not* follow, and defendants cannot appeal an award that is never made. Such dilemmas should be avoided. See *Gelboim v. Bank of America Corp.*, 135 S. Ct. 897, 904–06 (2015). We do not mean to suggest that the collateral-order doctrine applies; that possibility goes nowhere after *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009). Instead we mean that our conclusion about the award's finality steers clear of a problem that the opposite conclusion would produce.

So we have jurisdiction over the appeals, and we address each in turn. Defendants take issue with the structure of the fee award. They insist that the award should give class counsel only 25% (rather than 30%) of the second tier of re-

covery, 20% (rather than 24%) of the third, and 15% (rather than 18%) of the remainder. To this Freedom Home Care adds that the third tier should be capped at some figure lower than $56 million. These changes to the award, they say, would align it with awards of attorneys' fees that have been approved in other suits brought under the Act. See also *In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003).

Defendants are correct that the fee award is bigger than some awards in other suits. But that does not mean the award is too big. When awarding fees to class counsel, district courts must approximate the fees that the lawyers and their clients would have agreed to at the outset of the litigation given the suit's risks, competitive rates in the market, and related considerations. See *In re Synthroid Marketing Litigation*, 264 F.3d 712 (7th Cir. 2001); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013). The district court engaged in that *ex ante* analysis, explaining at length why this suit had been a riskier undertaking than many others brought under the Act and why counsel thus would have negotiated a relatively high rate of compensation. A primary source of risk was plaintiffs' reliance on a theory of vicarious liability, which created legal and factual complications that do not arise when plaintiffs pursue only direct liability. See 2017 U.S. Dist. LEXIS 54080 at *18–32.

We need not reproduce the district court's thorough discussion of this subject. We review decisions about attorneys' fees for abuse of discretion, see, e.g., *Silverman*, 739 F.3d at 958, and appellants have not identified any abuse. We add only that it is unproductive to make arguments about the percentages assigned to some tiers of recovery, as defend-

ants have done. Consider: 30% of the first $20 million and 20% of the next $20 million come to the same as 25% of $40 million. Bands and percentages can be juggled, but, unless the bottom line changes, what's the point? (The risk profiles of these two structures may differ, but that does not matter when they are devised after the award of damages has been calculated.) Defendants' position boils down to a contention that the fees exceed the market rate, and the district court did not abuse its discretion in finding otherwise. What got multiplied with what else to produce a market-approximating outcome does not matter.

Freedom Home Care contends that it is entitled to an incentive award and attorneys' fees for its objection to class counsel's fees. Plaintiffs' motion for fees had proposed that class counsel take a third of the fund. Freedom Home Care counter-proposed that the fund be divided into four tiers and that counsel take decreasing proportions of each. The award adopts that structure, which the parties call a "sliding-scale approach," and Freedom Home Care wants to be compensated for proposing it. Yet its proposal did not add marginal value to the litigation. Plaintiffs' motion itself discussed the sliding-scale approach, a common one in large class actions. The district court was certain to consider the possibility, no matter what Freedom Home Care said, so the court did not abuse its discretion in concluding that Freedom Home Care did not supply value to the class. See 2017 U.S. Dist. LEXIS 135755 (N.D. Ill. Aug. 24, 2017).

Last comes McCabe's appeal. He contends that the settlement improperly releases claims outside the class period (August 2011 to August 2012) and that the notice sent to the class members was deficient. For two reasons the district

court held that McCabe lacks standing to raise these objections. First, McCabe's objections state that he is "a class member who received calls on his cell-phone number … and landline phone … outside of the class period". The court found this statement self-contradictory; it treated McCabe's assertion that he received calls "outside of the class period" as an assertion that he did not receive calls within the class period, and it reasoned that McCabe thus could not be in the class. Second, in 2015 McCabe won a judgment against Caribbean Cruise Line in an action he had brought in the Eastern District of New York. The court decided that any claim arising from calls McCabe received during the class period should have been brought in his separate suit, and that the doctrine of claim preclusion now bars any such claim.

The district court's conclusions about standing were flawed. Claim preclusion, an affirmative defense under Fed. R. Civ. P. 8(c), has nothing to do with standing. See *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005). And there wasn't a basis to ignore McCabe's assertion that he is a member of the class. The statement on which the district court relied does not say otherwise; it tells us that McCabe is a member who *also* received calls outside the class period. The other parties ask us to disbelieve McCabe because he has not produced logs to show when he received calls. But McCabe supported his statement by signing it under penalty of perjury. See 18 U.S.C. §1621; 28 U.S.C. §1746. Though he could have proved his membership with different evidence, it does not follow that we should disregard the evidence he offered.

Despite concluding that McCabe lacks standing, the district court rejected his objections on the merits. So do we.

McCabe first argues that the settlement releases claims arising from calls outside the class period. The settlement defines "released claims" as:

> [A]ny and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims … arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged calls made with a prerecorded or artificial voice offering a free cruise in exchange for taking an automated public opinion and/or political survey[.]

According to McCabe, the "alleged calls" mentioned in this definition include calls made before 2011 or after 2012. Because the class members were never notified that the settlement covers such calls, the argument goes, the court should not have approved it. The argument rests on an incorrect premise. The "alleged calls" include: well, only the calls that were alleged. And the operative complaint, filed in March 2015, alleges calls only from August 2011 to August 2012. The appellate briefs tell us that plaintiffs and defendants (and the district court) agreed that "alleged calls" means "calls within the class period", and the doctrine of judicial estoppel will prevent those parties from taking an opposite position in future proceedings. See *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

We can quickly dispose of McCabe's remaining argument: He insists that the notice sent to the class insufficiently described the process for selecting a *cy pres* recipient. Not so. The notice told class members that a *cy pres* recipient might be selected after the second round of payments, gave instructions for recommending recipients, and provided a website where members can learn more about the settle-

ment. That is enough to meet the notice requirements of Fed. R. Civ. P. 23.

AFFIRMED