**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 7, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT
_____

In re: SAMSUNG TOP-LOAD WASHING
MACHINE MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION.

-------------------------------

JERRY WELLS, et al.,

     Plaintiffs - Appellees,

v.

BEST BUY CO., INC.; THE HOME
DEPOT, INC.; LOWE'S HOME CENTER,
LLC; SAMSUNG ELECTRONICS
AMERICA, INC.; SAMSUNG
ELECTRONICS CO., LTD.; LOWE'S
COMPANIES, INC.; SAMSUNG
ELECTRONICS COMPANY, LTD,

     Defendants - Appellees,

and

SEARS HOLDING CORPORATION,

     Defendant.

-------------------------------

JOHN DOUGLAS MORGAN,

     Objector - Appellant.

-------------------------------

No. 20-6097

ATTORNEY GENERAL OF THE STATE OF ALASKA; ATTORNEY GENERAL OF THE STATE OF ARKANSAS; ATTORNEY GENERAL OF THE STATE OF ALABAMA; ATTORNEY GENERAL OF THE STATE OF IDAHO; ATTORNEY GENERAL OF THE STATE OF INDIANA; ATTORNEY GENERAL OF THE STATE OF MISSOURI; ATTORNEY GENERAL OF THE STATE OF NORTH DAKOTA; ATTORNEY GENERAL OF THE STATE OF OKLAHOMA; ATTORNEY GENERAL OF THE STATE OF ARIZONA,

Amici Curiae.

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:17-ML-02792-D)**

_____

Theodore H. Frank, Hamilton Lincoln Law Institute, Center for Class Action Fairness, Washington, DC, for Objector – Appellant John Douglas Morgan.

John P. Elwood, Arnold & Porter Kaye Scholer LLP, Washington, DC (R. Stanton Jones and Anthony J. Franze, Arnold & Porter Kaye Scholer LLP, Washington, DC, and Arthur E. Brown and Elie Salamon, Arnold & Porter Kaye Scholer LLP, New York, New York, with him on the brief), for Defendants – Appellees.

Samuel Issacharoff, New York, New York (William B. Federman, Federman & Sherwood, Oklahoma City, Oklahoma, with him on the brief), for Plaintiffs – Appellees.

Kate B. Sawyer, Assistant Solicitor General (Mark Brnovich, Attorney General, with her on the brief), Office of the Arizona Attorney General, Phoenix, Arizona, for Amici Curiae.

_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

In 2015, consumers owning Samsung top-load washing machines experienced issues with the top-load door detaching mid-cycle. Litigation ensued across the country, with the cases consolidated into the multidistrict litigation underlying this appeal. Over the course of several months, and with the assistance of a mediator, class counsel and the defendants negotiated a Settlement Agreement that provided class members five forms of relief. Valuing the Settlement Agreement at between $6.55 and $11.42 million and finding that certain aspects of the Agreement provided the average claimant greater compensation than damages provable at trial, the district court, over John Douglas Morgan's objection, granted final class certification and final approval to the settlement.

Essential to Mr. Morgan's objections is the Settlement Agreement's inclusion of a "kicker" agreement and a "clear-sailing" agreement relative to the award of attorneys' fees and costs. Under the "kicker" agreement, Samsung retained the difference between the maximum permissible attorneys' fees and costs award of $6.55 million and the amount actually awarded by the district court. Mr. Morgan further argues that under the "clear-sailing" agreement, Samsung agreed not to contest any request by class counsel for attorneys' fees and costs of up to $6.55 million. Attempting to resolve his objections, Mr. Morgan and Samsung sought to negotiate a side agreement providing for the possible distribution to the class of a portion of the difference between the $6.55 million maximum permissible attorneys' fees and costs, and the actual amount awarded by the district court. Ratification of this side agreement, however, never occurred, with

3

Mr. Morgan walking away based on his purported fear that class counsel might sue him and his counsel if he and Samsung finalized the side agreement.

Instead of seeking the maximum award of $6.55 million, class counsel sought an attorneys' fees and costs award of just under $6.25 million. Scrutinizing the billing records submitted by class counsel and acknowledging the existence of the "kicker" and "clear-sailing" agreements in the Settlement Agreement, the district court awarded class counsel a reduced amount of just over $3.8 million. As a result of this reward falling well below the maximum permissible amount of $6.55 million, Samsung was able to retain money that likely would have been distributed to the class had Mr. Morgan and Samsung finalized the side agreement.

On appeal, Mr. Morgan advances three arguments: (1) the district court made clear errors of fact regarding settlement negotiations and the side agreement; (2) the district court abused its discretion by granting final approval to the Settlement Agreement where it included both a "kicker" and a "clear-sailing" agreement; and (3) the district court abused its discretion by granting final class certification and allowing class counsel to continue in its role after class counsel placed its interests ahead of the class's interests.

We hold that a district court must apply heightened scrutiny before approving a settlement that includes both a "kicker" agreement and a "clear-sailing" agreement. But our review of the record gives us confidence the district court did just that. And although the district court made one clear error in its fact-finding process, we conclude the error was harmless to its ultimate decisions regarding final class certification, final approval of

4

the Settlement Agreement, and its award of attorneys' fees and costs. Accordingly, we affirm the district court's orders on these matters.

# I.    BACKGROUND

## A. Initiation of Litigation

In 2015, thirty-four models of Samsung top-load washing machines, individually priced between $450 and $1500, experienced weakness issues with the top-load door mechanism. As a result of the weakness, the top-load door on some machines would detach during certain spin cycles, allowing water to spew out of the machine. In an effort to remedy this defect, the Consumer Product Safety Commission and Samsung announced a voluntary recall program under which Samsung would (1) provide a free repair to strengthen the top-load door and a one-year warranty extension; (2) give consumers a rebate toward the purchase of a new washing machine of any brand if a consumer was no longer using the washing machine; or (3) provide consumers who purchased a washing machine within the thirty days preceding the recall a full refund of the purchase price. Unsatisfied by the compensation offered by the recall program, consumers around the country filed class actions against Samsung.[1]

The Judicial Panel on Multidistrict Litigation ("JPML") ordered the various class actions filed, based on the top-load door defect, be combined into a single action and

---

[1] The class actions also named several retailers as defendants, specifically Best Buy Co., Inc.; The Home Depot, Inc.; Home Depot U.S.A., Inc.; Lowe's Companies, Inc.; Lowe's Home Centers, LLC; and Sears Holding Corporation. For ease of reference, we collectively refer to defendants as "Samsung."

assigned that action to the Honorable Timothy D. DeGiusti of the Western District of Oklahoma. The JPML also incorporated into the multidistrict litigation a New Jersey class action against Samsung based on design defects in the drain pump mechanism of the same washing machines experiencing top-load door defects. William B. Federman of Federman & Sherwood assumed the role of lead class counsel.

### B. Settlement Negotiations & Agreement

Following consolidation into the multidistrict litigation, the parties commenced settlement negotiations, with Michael Ungar serving as mediator. Over the span of several months, the parties spent nine days negotiating a settlement, focusing the first eight days of mediation on the issue of compensation and not turning to the issue of attorneys' fees and costs until the final day of mediation.[2] In a declaration, Mr. Ungar described the negotiations as "hard-fought," "lengthy," "exhausting," "at times frustrating," and "quite adversarial." Samsung App., Vol. I at 229, 231. Mr. Ungar further

---

[2] Describing the structure of settlement negotiations, Mr. Ungar advised the district court:

> The relief for class members was the focus of the vast majority of the mediation sessions and discussions. The provisions of the settlement providing for the payment of attorneys' fees, costs, and service awards for the named plaintiffs were negotiated only after the substantive relief to class members was agreed upon. There was no discussion of attorneys' fees, costs, or service awards to the named plaintiffs until all substantive terms of the settlement were negotiated. The substantive terms of the settlement were never reopened or altered once the parties' discussion of attorneys' fees, costs, and service awards began.

Samsung App., Vol. I at 231–32.

6

declared the settlement terms reached by the parties were "the product of arm's length negotiations by highly skilled, well-informed lawyers." *Id.* at 232.

Class counsel and Samsung signed the Settlement Agreement in May 2018. The Settlement Agreement provided class members owning machines with top-load door issues four options for relief: (1) enhanced minimum recall rebates, which would allow class members to receive a rebate worth up to 15.5% of the estimated purchase price of the washing machine;[3] (2) enhanced recall repair, wherein Samsung would send a technician to a class member's home to strengthen the top-load door mechanism and also provide the member a rebate toward the purchase of a future Samsung appliance; (3) top separation relief, which would allow a member experiencing a top-load door separation within seven years of purchasing a washing machine to receive a full refund on the purchase price of the machine as well as up to $400 in expenses resulting from the top-load door separation; or (4) recall repair with warranty extension, under which a class member could request a repair to their top-load door mechanism and receive a one-year extension of the warranty on the washing machine.[4] The settlement also provided relief to class members experiencing drain-pump failures, allowing (1) $150 to cover the cost of already-completed repairs or installation of a new drain pump, if failure occurred within

---

[3] Given the retail price of the washing machines, the maximum rebate of 15.5% of the purchase price permitted each consumer to recover between $69.75 and $232.50, depending on the specific model purchased.

[4] This option for relief also obligated Samsung to complete the repair within fourteen days of the class member's request or else give the member a $50 cash-equivalent card or replace the member's washing machine.

three years of the notice date of the settlement; and (2) up to $400 for expenses stemming from the failure of a drain pump.

In addition, the Settlement Agreement established parameters regarding an award of attorneys' fees and costs to class counsel. Central to this appeal, the parties agreed Samsung would "pay attorneys' costs and fees in the total, all-inclusive amount of $6,550,000.00, subject to approval of the Court." Morgan App. at 68. In accord with this language, Samsung agreed not to contest any requested award of fees and costs up to $6.55 million. And because the Settlement Agreement did not require Samsung to place any money to cover the attorneys' fees and costs in an escrow-type account prior to the district court's determination of the appropriate amount of the award, the Settlement Agreement permitted Samsung to retain the difference between the maximum permissible award of $6.55 million and the amount ultimately awarded by the district court.

### C.  Side Agreement Negotiations Between Mr. Morgan & Samsung

Mr. Morgan, represented by the Hamilton Lincoln Law Institute ("HLLI"),[5] expressed an intent to object to the Settlement Agreement. Mr. Morgan contended settlement negotiations between class counsel and Samsung culminated in a Settlement Agreement allowing class counsel to self-deal at the expense of class compensation. In particular, Mr. Morgan challenged the agreement that Samsung would retain the difference between the maximum permissible attorneys' fees and costs and the amount actually awarded by the district court in exchange for Samsung's agreement not to

---

[5] Mr. Morgan's niece is the president of HLLI.

8

challenge any request for fees and costs by class counsel of up to $6.55 million.

Mr. Morgan also asserted the Settlement Agreement provided class members little relief above what was already provided by the voluntary recall program.

In an effort to resolve the objections, Mr. Morgan and Samsung entered into negotiations toward a side agreement. Mr. Morgan and Samsung reached an agreement in principle and drafted a term sheet. The district court ordered Mr. Morgan and Samsung to "disclose all details of any agreements that they have reached during the pendency of this litigation" and place the side agreement on the record by December 31, 2019, some nineteen months after class counsel and Samsung signed the Settlement Agreement. Neither Mr. Morgan nor Samsung fully complied with the order. Samsung did, however, file a response outlining the general underpinnings of the side agreement. In pertinent part, Samsung represented the side agreement provided:

> A. If the Court does not award the maximum amount of attorneys' fees under the Settlement Agreement, some of the unawarded fees may be distributed to Settlement Class Members if certain conditions are met. Samsung and [Mr.] Morgan have agreed that 70% of the following amount is subject to potential distribution to Settlement Class Members: $6.65 million (the maximum fee award permitted under the Settlement Agreement) minus the total amount of attorneys' fees, costs, expenses, interest, and service awards awarded by the Court in any forthcoming fee award, minus 70% of any amount paid by Samsung to New Jersey Counsel in addition to the Court's fee award (which would be in settlement of New Jersey Counsels' claim related to the New Jersey litigation).
> B. The distribution to Settlement Class Members pursuant to paragraph A, above, will be made after the final outcome of any appeals, including appeals as to attorneys' fees, only if the total amount calculated in accordance with paragraph A, above, minus the estimated costs of settlement administration for this distribution and any fees awarded by the Court to Morgan's counsel[,] is greater than $600,000.

9

> If this amount is less than $600,000, no distribution shall be made and any unawarded attorneys' fees shall remain with Samsung.

Morgan App. at 194. As suggested by paragraph B, the side agreement allowed HLLI to seek attorneys' fees. And, assuming approval of the side agreement, Mr. Morgan agreed to drop all objections to the Settlement Agreement.

Class counsel submitted a brief in response to Samsung's filing regarding the side agreement. Class counsel argued "the side deal [was] unlikely to create *any* benefit for the class." *Id.* at 199 (emphasis in original). Class counsel also repeatedly questioned the propriety of both the side agreement and the negotiations leading to the side agreement:

- "The side agreement is part of a pattern of misconduct by HLLI and Samsung." *Id.* at 200.

- "[T]his side agreement appears to be another example of misbehavior by both HLLI and Samsung. The former executed an about-face on its view of the merits of the Settlement once it found a mechanism to get paid, even though class members may not receive even one dollar more than they would have many months ago. This is standard fare for HLLI." *Id.* (footnote omitted (which pointed out that negotiation and dispute over the side agreement was delaying final approval of the Settlement Agreement)).

- "Samsung, for its part, has a pattern of disregarding its representations and settlement commitments in this very litigation." *Id.*

- "Rather than meet its obligation, Samsung worked with HLLI to craft an [agreement] to transfer fees from class counsel to HLLI. Under the side agreement, HLLI can now claim for itself any attorneys' fees that are not paid to class counsel." *Id.* at 201 (citation omitted).

- "Samsung's collaboration with HLLI—in direct violation of the Settlement—is not meaningfully distinguishable from conduct condemned previously by the District of New Jersey." *Id.*

10

After class counsel's response, the district court granted Mr. Morgan and Samsung an extension of time to place the side agreement on the record. Mr. Morgan walked away from negotiations. Mr. Morgan cited the threat of suit by class counsel against both himself and HLLI as his basis for walking away from the side agreement. With no side agreement in place, Mr. Morgan proceeded with his objections to the Settlement Agreement.

### D. Mr. Morgan's Objections, the District Court's Rulings, and this Appeal

In April 2020, three months after the initial deadline set by the district court to place the side agreement with Samsung on the record and close to two years after class counsel and Samsung signed the Settlement Agreement, Mr. Morgan filed his objection to final approval of the Settlement Agreement. As to his argument for disqualifying class counsel, Mr. Morgan contended class counsel breached its duty to the class members by opposing the side agreement, an agreement Mr. Morgan asserted was certain to benefit the class without posing any risk to class member recovery. Mr. Morgan criticized class counsel for accusing HLLI and Samsung of misconduct by negotiating the side agreement. Mr. Morgan also claimed class counsel's course of conduct relative to the side agreement amounted to a breach of its fiduciary duty to the class such that Federal Rule of Civil Procedure 23(g)(4) precluded class counsel from continuing in its role as lead counsel. And, Mr. Morgan asserted that because disqualification of class counsel was required, the district court must decertify the class.

The district court denied Mr. Morgan's objections and granted final class certification and final approval to the Settlement Agreement. The district court found the following facts: (1) Mr. Morgan and Samsung never finalized the side agreement or presented the side agreement to the court; (2) class counsel did not threaten Mr. Morgan with litigation; and (3) class counsel took no position on the side agreement. The district court concluded nothing in class counsel's briefing on the side agreement undermined the adequacy of representation, and class counsel acted within reason when questioning whether any potential, but indefinite, monetary benefit from the side agreement was outweighed by the delay to the proceedings. Accordingly, the district court rejected Mr. Morgan's contention that class counsel had not adequately represented class interests and should be disqualified.

Thereafter, the district court concluded compensation under the Settlement Agreement was fair and adequate to the class. In so holding, the district court made several findings of fact about the Settlement Agreement. First, the district court found the Settlement Agreement was negotiated at arm's length and the parties "vigorously litigated" the case prior to reaching settlement terms. *Id.* at 243. Second, the district court turned to the actual compensation provided by the Settlement Agreement. Relying on the evidence of an expert offered by class counsel, the district court estimated the value of the future warranty protection offered by the Settlement Agreement at between $6.44 and $11.31 million.[6] And, importantly, the district court

---

[6] In a footnote, Mr. Morgan suggests the district court, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

found the enhanced minimum recall rebate option in the Settlement Agreement provided the average class claimant more than double the damages that could be established at trial, allowing for a rebate of 15.5% of the purchase price rather than an estimated 7%. *Id.* at 246 ("Class Members may also select an Enhanced Minimum Recall Rebate bringing their rebate payment to at least fifteen-and-a-half percent (15.5%) of their Washer's estimated purchase price (exceeding the estimated seven percent (7%) Plaintiffs would receive given a favorable jury verdict)."). Third, while the district court expressed skepticism about the value of rebates offered in the Settlement Agreement, it concluded the rebates were not the primary form of compensation.

Based on these findings, the district court granted final class certification and final approval to the Settlement Agreement. Two and a half weeks after granting final approval of the Settlement Agreement, the district court issued its ruling on the requested attorneys' fees and costs. Class counsel sought $5,996,079.46 in fees and $242,764.47 in costs, totaling an amount about $250,000 less than the maximum award permitted by the Settlement Agreement. After critically analyzing the hours billed and the hourly rate charged for varying services, the district court held that a

---

579 (1993), should have disqualified the expert. However, Mr. Morgan does not adequately develop his argument on this point. Accordingly, the issue of the expert's qualifications and exclusion of the expert is not properly before us. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are . . . inadequately presented[] in an appellant's opening brief.").

base fee amount of $2,951,067.50 was reasonable and supported by the record. The district court next selected a lodestar multiplier of 1.3.[7] This resulted in a total attorneys' fees and costs award of $3,836,387.75.[8] After calculating this amount, the district court crosschecked its award against the value of the Settlement Agreement to assess what percent of Samsung's total liability was attributable to attorneys' fees and costs to class counsel.

On appeal, Mr. Morgan argues the district court should have disqualified class counsel because class counsel opposed, rather than welcomed, the side agreement— an agreement that Mr. Morgan argues was certain to give the class more money. Pointing to the "kicker" and "clear-sailing" agreements, Mr. Morgan also criticizes class counsel for agreeing to a structure where Samsung could retain unallocated attorneys' fees rather than distributing them to the class in exchange for Samsung's agreement not to challenge class counsel's fees and costs request. In Mr. Morgan's view, Samsung was willing to pay a certain amount of money—compensation and attorneys' fees and costs combined—to settle the litigation, but the structure of the fee arrangement allowed Samsung to retain some of that money. Mr. Morgan

---

[7] On appeal, Mr. Morgan does not challenge the reasonableness of the billing hours or hourly rates for any of the services performed by class counsel. Nor does Mr. Morgan directly challenge the district court's selection of a 1.3 lodestar multiplier.

[8] This amount is approximately $2.7 million below the maximum permissible award established by the Settlement Agreement. As such, all indications suggest some additional money would have been disbursed to the class members had Mr. Morgan and Samsung finalized the side agreement and had the district court approved that side agreement.

contends this court should reverse the district court's orders granting final class certification, granting final approval to the Settlement Agreement, and awarding class counsel attorneys' fees and costs, and should further hold the district court erred by not disqualifying class counsel.

## II.  DISCUSSION

### A. Standard of Review

We review de novo whether the district court applied the correct Federal Rule of Civil Procedure 23 standard when certifying the class.[9] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). If the district court applied the correct standard, "we may reverse that decision only for abuse of discretion." *Id.* at 1085 (quotation marks omitted). "The district court abuses its discretion when it misapplies the Rule 23 factors—either through a clearly erroneous finding of fact or an erroneous conclusion of law." *Id.* at 1085–86. "Because class certification decisions are necessarily case specific, district courts possess significant latitude in deciding whether or not to certify a class." *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (citation omitted). "As long as the district court applies the proper Rule 23 standard, we will defer to its class certification ruling provided that decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." *Id.*

---

[9] Mr. Morgan does not contend the district court ignored Federal Rule of Civil Procedure 23 or applied the incorrect standard when granting final class certification.

15

"The district court's approval of a class action settlement is reviewed for an abuse of discretion." *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1290 (10th Cir. 2008). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (quotation marks omitted). However, even where a district court makes a clearly erroneous factual finding, we may affirm if the error is harmless. 28 U.S.C. § 2111; *see also* Fed. R. Civ. P. 61.

### B. Federal Rule of Civil Procedure 23 Standard in Class Actions

Federal Rule of Civil Procedure 23(e) governs the approval of settlement agreements in class actions. Under the Rule, a district court, before approving a settlement agreement, must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, a district court must consider whether:

> (A) the class representatives and *class counsel have adequately represented the class*;
> (B) the proposal was *negotiated at arm's length*;
> (C) the *relief provided for the class is adequate*, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) *the terms of any proposed award of attorney's fees*, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

16

Fed. R. Civ. P. 23(e)(2)(A)–(D) (emphasis added). This court has further noted four factors for evaluation by a district court:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) *whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation*; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

*In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1116–17 (10th Cir. 2017) (emphasis added) (quotation marks omitted).

Meanwhile, Rule 23(g) governs the appointment and maintenance of class counsel. Under the Rule, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Based on the Rule's plain language, "a district court's decision to certify a class must *precede* the appointment of class counsel." *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). A district court may only appoint an attorney to represent the class if the attorney "is adequate under Rule 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2). And under Rule 23(g)(4), class counsel has a duty to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

The duty placed on class counsel by Rule 23(g)(4) continues through entry of final judgment. *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261–62 (2d Cir. 2021). "A district court is required to monitor class proceedings and 'reassess its class rulings as the case develops.'" *Id.* at 261 (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)). Where class counsel does not persist in satisfying its duty under Rule 23(g)(4), a district court may decertify the class if doing so would

protect the class; but, the court may also consider other measures, such as disciplinary action against class counsel, to address class counsel's breach of the Rule 23(g)(4) duty. *Id.* at 262–63; *Sheinberg*, 606 F.3d 134.

### C. Review of Settlements with "Kicker" and "Clear-Sailing" Agreements

### 1. Legal Standard

This case presents an issue of first impression regarding the degree of scrutiny a district court must apply to a settlement agreement in a class action where the terms governing the award of attorneys' fees and costs contain a "kicker" *and* a "clear-sailing" agreement. From out-of-circuit authority and the arguments presented by the parties, we identify four possible standards for reviewing settlement agreements containing both a "kicker" and a "clear-sailing" agreement: (1) a *per se* prohibition against such settlement agreements; (2) a presumption against the fairness and reasonableness of such settlement agreements; (3) a requirement that the district court apply increased or heightened scrutiny before granting final approval to such settlement agreements; and (4) the normal standard governing the approval of settlement agreements in class action litigation. We conclude the third approach— heightened scrutiny—is appropriate because while "kicker" and "clear-sailing" agreements may serve a purpose in the negotiation process, the presence of both agreements in a settlement agreement also suggests the class members may not be receiving all reasonable benefits.

A true "kicker" agreement allows "all fees not awarded [to class counsel to] revert to defendants rather than be added to the *cy pres* fund or otherwise benefit the

18

class."[10] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). A "clear sailing" agreement is one where the defendant "agree[s] not to object to an award of attorneys' fees" specified in a settlement agreement. *Id.*

To our knowledge, no court has adopted a *per se* rule against inclusion of "kicker" and "clear-sailing" agreements in settlements. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015) (declining to adopt a *per se* rule and noting the Ninth Circuit has also declined to do so). This court has affirmed a district court's final approval of a settlement agreement containing a "kicker" provision.[11] *Fager v. CenturyLink Comm's, LLC*, 854 F.3d 1167, 1176–77 (10th Cir. 2016). And there is good reason for not automatically rejecting settlements with

---

[10] Technically speaking, the Settlement Agreement did not contain a true "kicker" provision because Samsung never relinquished the $6.55 million in potential attorneys' fees and costs. However, the effect of the structure of the attorneys' fees and costs provisions in the Settlement Agreement is the same because, after entry of final judgment, Samsung will permanently retain the difference between the permissible maximum award of $6.55 million and the actual award of just over $3.8 million.

[11] The "kicker" provision in *Fager v. CenturyLink Communications, LLC* differs from the "kicker" agreement in the Settlement Agreement as the provision in *Fager* allowed the defendant to receive a reversion of unclaimed monies from the class compensation fund. 854 F.3d 1167, 1176 (10th Cir. 2016). However, where the settlement in *Fager* also permitted class counsel to receive a "fixed fee independent of the amount recovered by the class," *see id.*, the general concept of a defendant receiving a reversion in exchange for class counsel receiving favorable terms regarding attorneys' fees was also at issue in *Fager*. Thus, although the "kicker" provisions in *Fager* and the Settlement Agreement here are not identical, we believe *Fager* is instructive with regard to addressing the "kicker" provision in the Settlement Agreement and what impact the inclusion of a "kicker" agreement and an agreement on attorneys' fees favorable to class counsel has on the district court's duty to scrutinize a settlement agreement and the award of attorneys' fees and costs.

"kicker" agreements. "Kicker" agreements can valuably further negotiations by allowing defendants to establish their maximum liability with the expectation that their actual liability will ultimately be less once the district court scrutinizes class counsel's fees and costs request. In settlements providing fair and reasonable compensation to the class members, "kicker" agreements, as opposed to the automatic distribution of unawarded attorneys' fees and costs to class members, can avoid situations where participating class members receive a windfall, well above their actual damages, at the expense of the defendant. Further, reversions to defendants are not inherently improper. Had class counsel and Samsung not reached an agreement regarding who would receive the difference between the maximum permissible attorneys' fees and costs and the actual award, the district court could have nonetheless permitted Samsung to retain the difference. *See Van Gemert v. Boeing Co.*, 739 F.2d 730, 736–37 (2d Cir. 1984) (affirming decision by special master to return unclaimed judgment funds to a defendant). Thus, if a district court can order a reversion to a defendant, we see no reason why we should adopt a rule strictly precluding parties from providing for the same result as part of a settlement.

As for "clear-sailing" agreements, "not every 'clear[-]sailing' provision demonstrates collusion." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012). This court has affirmed a district court's approval of a settlement agreement containing a "clear-sailing" agreement without advancing any commentary critical of the provision. *See In re Motor Fuel*, 872 F.3d at 1119–20. And we are not alone. Other circuits have not only affirmed final approval of settlements containing

20

"clear-sailing" provisions but have affirmed final approval of settlements containing both a "kicker" provision and a "clear-sailing" provision. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1125–28 (9th Cir. 2020); *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 290–91 (6th Cir. 2016). Further, it has long been recognized that "kicker" and "clear-sailing" agreements can play an important role in class action settlement negotiations "because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged." *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 629 (1997). With these considerations in mind, we reject Mr. Morgan's suggestion that this court adopt a *per se* rule prohibiting parties from including "kicker" and "clear-sailing" agreements in class action settlement agreements.[12]

However, the inclusion of both a "kicker" agreement and a "clear-sailing" agreement can be an "indic[ation] of possible implicit collusion." *In re Bluetooth Headset*, 654 F.3d at 947. We have previously expressed concerns about attorneys' fees and costs awards in cases where the settlement agreement contained a "kicker" provision. In *Fager* we suggested that where a settlement agreement contains a

---

[12] For similar reasons, we also reject an approach placing a presumption of unreasonableness on settlement agreements containing a "kicker" and a "clear-sailing" agreement. Individual class actions, by nature, are unique and the terms of settlement agreements vary significantly between actions such that we cannot presume the presence of a "kicker" and a "clear-sailing" agreement in a settlement suggests unfairness to the interests of the class in all cases.

"kicker" provision, use of only the traditional lodestar method to calculate the fees award may not adequately scrutinize the requested award, and therefore a district court should crosscheck its award against the amount paid by the defendants to the class members.[13] *Fager*, 854 F.3d at 1177. Further, we have expressed wariness about the potential for class counsel and defendants to reach an agreement that prioritizes the award of attorneys' fees and costs at the expense of class compensation and the interests of class members:

> "The defendant cares only about the size of the settlement, not how it is divided between the attorneys' fees and compensation for the class. From the selfish standpoint of class counsel and the defendant, therefore, the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees." Thus, class counsel may be tempted "to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers."

*In re Motor Fuel*, 872 F.3d at 1117 (quoting *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014)). As for "clear-sailing" provisions, they cut against the general adversarial nature of our legal system, potentially leaving it to the district court to first develop arguments against the requested fees and costs and then to rule on those very arguments. *See In re Bluetooth Headset*, 654 F.3d at 949 (collecting authorities raising this concern and stating "[a]lthough clear sailing provisions are not

---

[13] The objector in *Fager* did not properly preserve objections to the fees structure of the agreement. 854 F.3d at 1177. Thus, although we discussed concerns regarding the fees structure in that agreement, we did not adopt a position regarding how district court's should adjust their analysis where a settlement agreement contains a "kicker" agreement. *See id*.

prohibited, they 'by their nature deprive the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored" (brackets omitted) (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).

To address these concerns, the Ninth Circuit has recognized that where a settlement agreement contains a "kicker" and a "clear-sailing" agreement, "the district court ha[s] a special 'obligation to assure itself that the fees awarded in the agreement were not unreasonably high' for[,] if they were, 'the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.'"[14] *Id.* at 947 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964–65 (9th Cir. 2003)). The Seventh Circuit has arguably gone a step further and concluded the inclusion of "kicker" and "clear-sailing" provisions in a settlement "weigh[s] substantially against the fairness of a settlement and call[s] for 'intense critical scrutiny by the district court.'" *In re Sw. Airlines Voucher Litig.*, 799 F.3d at 712 (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014)).

We hold a heightened scrutiny approach draws the proper balance. Faced with a settlement containing a "kicker" agreement *and* a "clear-sailing" agreement, a

---

[14] *In re Bluetooth Headset* also involved a situation where class counsel received an award disproportionate to the amount of class compensation. 654 F.3d 935, 947 (9th Cir. 2011).

district court must carefully consider whether the settlement was negotiated at arms-length. As part of this evaluation, the district court shall take special care to assure the class members receive fair and reasonable compensation based on record evidence of their actual damages and the likelihood of success at trial. A court should also consider the fees and costs award provided for by the settlement in comparison to the value of the settlement to the class. *In re Bluetooth Headset*, 654 F.3d at 947–48. And a district court may consider the structure of the negotiation process, including whether the parties negotiated attorneys' fees and costs while negotiating class compensation or whether negotiations on fees and costs were reserved until after the parties reached an agreement on class compensation. In considering the structure of negotiations, a district court should seek independent verification of any claims by the parties that attorneys' fees and costs were negotiated subsequent to and apart from class compensation. *See id.* at 948. Additionally, a court may consider whether the parties relied upon a neutral mediator to aid settlement negotiations, a consideration that "weigh[s] in favor of a finding of non-collusiveness [but] is not on its own dispositive." *Id.* Finally, the district court shall consider the litigation and settlement agreement as a whole, searching for other indicia of self-dealing by class counsel through negotiations with the defendant.[15]

---

[15] The considerations identified in this paragraph are by no means an exhaustive list of factors for a district court to evaluate before approving a settlement agreement containing both a "kicker" and a "clear-sailing" agreement. Each class action is unique and the district court, being keenly familiar with the case, must exercise its discretion to identify and consider relevant factors when determining

## 2.    Application

Having set forth the standard for evaluating settlement agreements containing both a "kicker" and a "clear-sailing" agreement, we now review the scrutiny actually applied by the district court in this case. We hold the district court applied sufficient scrutiny and did not abuse its discretion by granting final approval of the Settlement Agreement.

The district court acknowledged the attorneys' fees and costs structure created by the Settlement Agreement. The district court took care to rely on expert evidence to determine the value of certain aspects of the settlement.[16] And the district court found that the average class claimant received compensation in excess of damages provable at trial, receiving rebates worth 15.5% of the estimated price of a washing machine rather than approximately 7%. This conclusion, which Mr. Morgan has not disputed with any evidence, is critical to affirming the district court's grant of final approval of the Settlement Agreement. Simply put, where class members were receiving compensation equivalent to or in excess of actual damages, it cannot be said that class counsel and defendants negotiated terms that favored attorneys' fees and costs at the expense of adequate and reasonable compensation for the class.

---

whether a given settlement agreement was negotiated at arms-length with class counsel ardently representing the interests of the class members.

[16] Although Mr. Morgan disagrees with the valuation reached by the expert advanced by class counsel, he does not point us to any *evidence* he presented to counter the expert's opinion and establish a competing, lesser valuation for the Settlement Agreement.

Rather, additional compensation to the class members would have provided a windfall. Thus, while the inclusion of a "kicker" and a "clear-sailing" agreement in the fees and costs structure might serve as an indication of improper self-dealing, the structure of the negotiations and the actual compensatory terms of this Settlement Agreement counteract the proposition that the Agreement was the product of self-dealing by class counsel through negotiations with Samsung. And this conclusion is confirmed by Mr. Ungar's declaration discussing the nature, tenor, and structure of the settlement negotiations.

In summation, the record supports the conclusion that class counsel fought hard for the interests of the class members and obtained more than equitable compensation for the class. Accordingly, the district court, in this complex multidistrict litigation, applied sufficient scrutiny and acted well within its discretion to grant final approval of the Settlement Agreement.

### D.  Mr. Morgan's Request to Disqualify Class Counsel & Decertify the Class

We next hold the district court did not abuse its discretion by rejecting Mr. Morgan's request to disqualify class counsel and decertify the class. Our analysis of this issue revolves around two provisions of Federal Rule of Civil Procedure 23. Rule 23(g)(4) imposes a duty on class counsel to "fairly and adequately represent the interests of the class." Relatedly, before granting final approval to a settlement, a district court must assure itself that "class counsel ha[s] adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Our previous analysis of the benefits provided to the class members by the Settlement Agreement favors the conclusion that the district

court did not abuse its discretion in denying Mr. Morgan's request to disqualify class counsel and decertify the class.

Mr. Morgan, however, argues class counsel also breached its fiduciary duty to the class by opposing the side agreement that would have permitted the class members to receive additional compensation. We start our analysis of this argument by considering three factual findings by the district court that Mr. Morgan contends are clearly erroneous. Concluding one of the three findings was clearly erroneous, we then consider whether this factual error requires vacatur and remand or if it was harmless to the district court's ultimate rejection of Mr. Morgan's request to disqualify class counsel and decertify the class.

First, Mr. Morgan disputes the district court's finding that he and Samsung had not finalized the side agreement and that the agreement "may (or may not) have come to fruition." Morgan App. at 229. Mr. Morgan contends he and Samsung reached final terms on the side agreement and the deal was essentially done. The record does not support Mr. Morgan's position. Although the district court provided Mr. Morgan two opportunities to place the side agreement on the record, Mr. Morgan never complied with the district court's orders. In fact, Mr. Morgan left it to Samsung to disclose the general terms of the side agreement by the first deadline, of December 31, 2019.[17] Accordingly, the district court was well within its right to

---

[17] Samsung's filing does note that it "conferred" with Mr. Morgan before submitting its response to the district court's order. Morgan App. at 192.

express skepticism about whether the side agreement would come to fruition, and it did not clearly err by finding that Mr. Morgan and Samsung had not finalized a side agreement.

Second, Mr. Morgan contests the district court's finding that "Class Counsel never threatened to sue Objector Morgan." *See id.* Once again, we find no clear error in this factual finding. While class counsel alleged Mr. Morgan had engaged in "misconduct," *id.* at 200, such an allegation is far from a threat to sue. And an e-mail from class counsel to Mr. Morgan indicated that class counsel had never threatened to sue Mr. Morgan or HLLI. While Mr. Morgan believes he was entitled to a more definitive and affirmative promise not to sue from class counsel, he points to nothing in the record contradicting class counsel's statement that it had never threatened to sue Mr. Morgan or HLLI. Simply put, class counsel expressing concerns about the side agreement does not equate to threatening to sue Mr. Morgan and HLLI.

This takes us to Mr. Morgan's third challenge to the district court's factual findings: that "Class Counsel took no position as to the side agreement." *Id.* at 230. Here, we find clear error. As outlined *supra* at 10, class counsel rather obviously opposed the side agreement, describing the negotiations between HLLI and Samsung as "misconduct" and "misbehavior" and arguing the side agreement was unlikely to provide class members any benefit. *Id*. at 200.

We hold, however, that this error was harmless. By virtue of Mr. Morgan not complying with the district court's orders to place the side agreement on the record, class counsel had reason to be skeptical of whether the side agreement would actually

28

come to fruition or if it would otherwise delay, or further delay, final approval of the Settlement Agreement and distribution of settlement proceeds to the class members. Furthermore, where the side agreement allowed HLLI to seek attorneys' fees and costs and Mr. Morgan's niece served as president of HLLI, it was not unreasonable for class counsel to question Mr. Morgan's motivations both in objecting and in offering to drop his objections if the side agreement came to fruition. Thus, although the district court erred by finding that class counsel did not oppose the side agreement, there were reasonable bases, in line with the interests of the class members, for class counsel to oppose further negotiations on the side agreement.[18] And the district court recognized that class counsel had reason for concern regarding the side agreement delaying the proceedings.

Ultimately, we disagree with Mr. Morgan's contention that class counsel breached its fiduciary duty to the class by way of its briefing in opposition to the side agreement. And where the Settlement Agreement provided class members fair, reasonable, and adequate compensation, we see no indication class counsel otherwise breached its fiduciary duty to the class. Therefore, we conclude the district court did

---

[18] Given that nineteen months elapsed between class counsel and Samsung signing the Settlement Agreement and the initial December 31, 2019, deadline set by the district court for Mr. Morgan and Samsung to place any side agreement on the record, Mr. Morgan and Samsung had more than adequate time to negotiate and finalize any side agreement.

not abuse its discretion by denying Mr. Morgan's request to disqualify class counsel.[19]

### E.  District Court's Award of Fees and Costs

Mr. Morgan contests the district court's award of attorneys' fees and costs based, once again, on the presence of the "kicker" and "clear-sailing" agreements in the Settlement Agreement. We hold the presence of "kicker" and "clear-sailing" agreements in a settlement do place a heightened duty on the district court relative to any award of attorneys' fees and costs. And we adopt the suggestion from *Fager* that before awarding fees and costs, a district court must make findings as to the defendant's total liability to the class under the settlement—i.e., the value of the settlement—and the estimated financial impact on the defendant based on the terms of the settlement and in light of then-prevailing information on the class participation rate. *See Fager*, 854 F.3d at 1176–77 (recognizing merit to measuring attorneys' fees against "the amount actually paid to the class"). A district court, after carefully reviewing billing records and performing the traditional lodestar analysis, should crosscheck the fees and costs award against both the value of the settlement and the estimated actual cost to the defendant. Finally, where a settlement agreement contains a "clear-sailing" agreement, any doubts regarding hourly rates and billed

---

[19] Because Mr. Morgan's arguments for not granting final class certification and decertifying the class hinged on disqualifying class counsel, we likewise conclude the district court did not abuse its discretion in rejecting Mr. Morgan's positions on these two related issues.

hours shall be resolved against class counsel. In this sense, where class counsel bargains for a defendant's agreement not to challenge a request for fees and costs, class counsel assumes a heightened burden for establishing the propriety of the records supporting its fees and costs award.

Although the Tenth Circuit had not yet adopted this framework, the district court complied with it. The district court was well aware of the value of the settlement, the class participation rate, and the resulting actual financial impact on Samsung.[20] The district court also scrutinized the billing records offered by class counsel, carefully explaining its rationale for accepting the submissions. And, after performing its lodestar analysis, the district court crosschecked its award against the value of the Settlement Agreement and the actual cost of the Settlement Agreement to Samsung—i.e., relief to class claimants and the value of the warranties provided under the Agreement.

Notably, this process employed by the district court resulted in an award to class counsel well below both the maximum permissible award of $6.55 million and the award of about $6.25 million sought by class counsel. The final award amounted

---

[20] In determining the actual financial impact of the Settlement Agreement on Samsung, we consider both the payments Samsung made to class claimants and the value of the warranties provided to class members by the Settlement Agreement. Although the warranties may not have ultimately required payments from Samsung, warranties, like insurance, carry with them actuary value and provide consumers peace of mind. Had Samsung sold the washing machines with the now extended warranty provided as a result of the Settlement Agreement, the list price for the machines likely would have been higher. Thus, while the warranties do not presently require Samsung to pay any monies, they are akin to a lost profit.

to slightly more than half of the minimum value of the Settlement Agreement and approximately one-third of Samsung's total minimum liability for compensation, service awards, costs, and attorneys' fees under the Agreement. Working off the maximum estimated valuation of the settlement of $11.42 million, the awarded attorneys' fees and costs amount to about one-third of the maximum settlement valuation and about one-quarter of Samsung's total maximum liability for compensation, service awards, costs, and attorneys' fees. For purposes of crosschecking a lodestar figure against the value of a settlement, these percentages are well within the range of reasonable and permissible fees and costs awards in class action litigation. *See Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991) ("The majority of common fund fee awards fall between 20% and 30% of the fund. . . . To avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded."); *see also In re Motor Fuel*, 872 F.3d at 1119–20 (finding no abuse of discretion where district court approved settlement agreement permitting for attorneys' fees and costs in excess of half the money paid by defendant). Accordingly, Mr. Morgan has provided us no grounds for disturbing the district court's calculated judgment in awarding class counsel just over $3.8 million in fees and costs.

### III.   CONCLUSION

We hold that where a settlement agreement in a class action contains a "kicker" agreement *and* a "clear-sailing" agreement, the district court must apply

32

heightened scrutiny before granting final approval of the settlement agreement and when determining the attorneys' fees and costs award. Here, the district court did just that. And while the district court did make one clear error in its factual findings, the error was harmless. Therefore, we AFFIRM the district court's orders granting final class certification, granting final approval to the Settlement Agreement, and awarding class counsel attorneys' fees and costs.